UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PALMATE, LLC, a Florida limited
liability company, f/k/a FLORIDA
EXTRACTS, LLC, a Florida limited          CASE NO.:
liability company,

       Plaintiff,

vs.

PRECISION EXTRACTION NEWCO,
LLC, a Michigan limited liability
company, f/k/a MASS2MEDIA LLC, a
Michigan limited liability company,
d/b/a PRECISION EXTRACT
SOLUTIONS; and PX2 HOLDINGS,
LLC, a Michigan limited liability
company, d/b/a PRECISION
EXTRACT SOLUTIONS,

       Defendants.

_____

## **COMPLAINT**

Plaintiff, PALMATE, LLC, a Florida limited liability company, f/k/a
FLORIDA EXTRACTS, LLC, a Florida limited liability company ("Plaintiff"),
hereby sues Defendants, PRECISION EXTRACTION NEWCO, LLC, a
Michigan limited liability company, f/k/a MASS2MEDIA LLC, a Michigan
limited liability company, d/b/a PX2 HOLDINGS, LLC, a Michigan limited
liability company, d/b/a PRECISION EXTRACT SOLUTIONS ("Precision

Newco"); and PX2 HOLDINGS, LLC, a Michigan limited liability company, d/b/a PRECISION EXTRACT SOLUTIONS ("PX2") (collectively, "Defendants" or "Precision"), and alleges as follows:

## Parties, Jurisdiction, and Venue

1.      Plaintiff is a Florida limited liability company with its principal place of business located in Florida.  Plaintiff's members are (1) Achenes Holdings, LLC ("Achenes"); (2) Lykes P.H.A.R.M., LLC ("Lykes"); and (3) Processing Products Holdings, LLC ("PPH").  Achenes is a Delaware limited liability company with its principal place of business located in Florida. Achenes's sole member is Tavistock Corporation, which is a Florida corporation with its principal place of business located in Florida.  Lykes is a Florida limited liability company with its principal place of business located in Florida. Lykes's sole member is Lykes Bros., Inc., which is a Florida corporation with its principal place of business located in Florida.  PPH is a Delaware limited liability company with its principal place of business located in Florida.  PPH's sole member is US Sugar Corporation, which is a Delaware corporation with its principal place of business located in Florida.  Thus, Plaintiff is a citizen of Florida and Delaware.

2.      Precision Newco is a Michigan limited liability company with its principal place of business located in Michigan.  Precision is the successor-in-interest by merger to Mass2Media, LLC, a Michigan limited liability company

2

("M2M").   A copy of the Certificate of Merger filed with the Michigan Department of Licensing and Regulatory Affairs Corporations, Securities & Commercial Licensing Bureau (the "Certificate of Merger") is attached as **Exhibit "A."**  The sole member of Precision Newco is Agrify Corporation ("Agrify").  Agrify is a Nevada corporation with its principal place of business located in Massachusetts.  Thus, Precision Newco is a citizen of Michigan, Nevada, and Massachusetts.

3.    Precision Newco engages in substantial and not isolated activity in the State of Florida and is subject to the jurisdiction of this Court.

4.    PX2 is a Michigan limited liability company with its principal place of business located in Michigan.  PX2 was an assumed name for M2M, which was transferred to Precision Newco pursuant to the Certificate of Merger.  A copy of the Michigan Department of Licensing and Regulatory Affairs Filing Endorsement Certificate of Assumed Name is attached as **Exhibit "B."**  PX2, as an assumed name for Precision Newco, shares the same citizenship as Precision Newco.  Thus, PX2 is a citizen of Michigan, Nevada, and Massachusetts.

5.    PX2  engages in substantial and not isolated activity in the State of Florida and is subject to the jurisdiction of this Court.

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties

and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted in this action occurred in the Middle District of Florida.

8.     This action is properly filed in the Orlando Division because it is the division to which the action is most directly connected and in which the action is most conveniently advanced.

9.     Plaintiff has retained the law firm of Latham, Luna, Eden & Beaudine, LLP to represent it in this action and is obligated to pay the Firm a reasonable fee in connection therewith.

10.    All conditions precedent to the filing and maintenance of this action have been performed, waived, or otherwise excused.

## General Allegations

11.    In August 2019, Plaintiff closed on the purchase of a 42,000 square foot industrial facility with the intention of improving and operating it for the production of industrial hemp ingredients at a commercial scale.

12.    To that end, Plaintiff began exploring options available in distillation and extraction equipment in order to meet the company's growth demands, which require industrial rate output of the product, while maintaining the high standards of pure hemp extract mandatory in domestic

and international compliance certifications.

13.     Because of the complex nature of hemp extraction systems, equipment purchases of this nature require designs specific to the type of cannabis to be processed and rely heavily on the guidance of equipment manufacturers and distributors to provide the correct equipment for its needs.

14.     Around August 2019, Plaintiff began discussions with Precision regarding the need for a customized turnkey hemp extraction, distillation, and crystallization system (the "System").

15.     As part of these discussions, the COO of Plaintiff, Jeffrey Field ("Field"), flew to Michigan to meet with Precision for consultation on equipment options and to further review lab-engineering plans for an XMOD system, solvent recovery, distillation, and crystallization equipment prepared and recommended by Precision.

16.     After Field's visit and several follow-up calls, Plaintiff expressed its interest in moving forward with the proposed equipment selections.

17.     On or about October 23, 2019, Kevin Serwatowski ("Serwatowski"), the Business Development Director of Precision, emailed Field to recommend an alternative extraction system comprised of (1) primary extraction, with centrifugal extractors manufactured by Western States; (2) ASE/solvent recover; (3) decarboxylation; (4) distillation, with a CDU 10K distillation unit; (5) isolation; and (6) vacuum drying.  Serwatowski made the

5

following material representations of fact regarding the proposed extraction system (the "Representations"):

> a. The centrifugal extraction system is a better product for Plaintiff's extraction needs as it has the ability to process the requested industrial rate of 2,0000 lbs. in twelve (12) hours or less;

> b. The centrifugal extraction system will provide easier use;

> c. There is better solvent efficiency and higher recovery in the cannabis distillation, with "zero bottlenecks";

> d. It has the ability to remove an entire process due to the elimination of the need for a filter press; and

> e. Precision guaranteed ten to twelve days of complete install and training of the contracted equipment.

A copy of the October 23, 20219, e-mail is attached as **Exhibit "C."**

18. Serwatowski made the Representations as Precision's agent, in the course of Precision's business, knowing and intending that Plaintiff would rely on the Representations in deciding whether to enter into a contract to purchase the extraction system for use in Plaintiff's business, which included a CDU 10K distillation unit manufactured by UIC GmbH (the "Equipment").

19. In reasonable and justifiable reliance on Precision's expertise and the Representations, declarations, in November 2019, Plaintiff agreed to purchase the System recommended by Precision for a total of $1,798,322.51,

including the Equipment for the amount of $372,505.60. A true and accurate copy of Precision's invoice for the Equipment, which forms the basis of the parties' agreement for the purchase and sale of the Equipment (the "Purchase Agreement"), is attached as **Exhibit "D."**

20.    In or about September 2020, Precision's team began to install the System at Plaintiff's facility.

21.    However, despite Precision's guaranty that the installation would be completed in ten to twelve days, the installation of the System was not completed until four (4) months later in January 2021, with Plaintiff performing limited start-up and training usage of the Equipment until about March 2021.

22.    On or about June 25, 2021, Plaintiff e-mailed Precision a list of numerous issues it was having with the System and the Equipment. A copy of Plaintiff June 25, 2021, e-mail is attached as **Exhibit "E."**

23.    On or about July 2021, Precision represented on its website it intended to halt production of the CDU 10K units.

24.    To date, the Equipment does not perform as promised and does not conform with the guaranteed specifications for the performance of the Equipment, as represented by Precision.

25.    From the date of the installation, the Equipment was inoperable more than half the time.

26. Between June 2021 and early 2022, Precision attempted to address the multitude of deficiencies identified by Plaintiff. However, Precision ultimately failed and/or refused to take the steps necessary to correct the deficiencies.

27. Since January 2022, Plaintiff has not used, and has not been able to use, the Equipment.

28. As a result of the foregoing, Plaintiff has lost substantial earnings and has subsequently had to purchase replacement equipment.

## COUNT I
## BREACH OF CONTRACT

29. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

30. The Purchase Agreement is a valid contract that is certain and definite in all its material terms.

31. The Purchase Agreement provides Precision was obligated to deliver the Equipment per the specifications and requirements set forth in therein.

32. The Equipment delivered to Plaintiff has not functioned in accordance with the agreed terms.

33. Plaintiff commissioned and contracted for industrial capacity distillation equipment capable of achieving production input levels of 10 kg per

hour that would meet Plaintiff's stated volume needs and quality requirements, which Precision failed to provide.

34.     Precision materially breached the Purchase Agreement by failing and refusing to provide Equipment in workable condition and in accordance with the terms of the Purchase Agreement.

35.     As a direct and proximate result of Precision's material breach of the Purchase Agreement, Plaintiff has suffered damages,

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Precision awarding Plaintiff (a) damages; (b) interest; (c) the costs of this action; and (d) such other and further relief as the Court deems proper.

## COUNT II
## BREACH OF EXPRESS WARRANTY

36.      Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

37.     By making the Representations, Precision, as the seller of the Equipment, made express warranties to Plaintiff.

38.     The express warranties made by Precision became part of the basis of the benefit of the bargain set forth in the Purchase Agreement.

39.     Precision materially breached its express warranties by failing to provide Equipment capable of manufacturing at the industrial volume output

and quality guaranteed by Precision.

40.     Plaintiff afforded Precision notice and an opportunity to cure the defects.  *See* Exhibit "E."  However, Precision did not take the steps necessary to correct the breach.

41.     As a direct and proximate result of Precision's material breach of its express warranties, Plaintiff has suffered damages including, but not limited to, the cost of purchasing replacement equipment and lost profits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant awarding Plaintiff (a) damages; (b) interest; (c) the  costs of this action; and (d) such other and further relief as the Court deems proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR PARTICULAR PURPOSE

42.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

43.     Plaintiff had extensive discussions with Precision regarding its need for an industrial capacity distillation unit that could produce at specific levels to meet its growth demand.

44.     At the time Precision contracted with Plaintiff for the sale of the Equipment, it had reason to know of Plaintiff's particular purpose for the Equipment.  As such, there is an implied warranty that the Equipment would

be fit for such purpose.

45.    Precision knowingly sold the Equipment to Plaintiff, for a particular purpose, namely and specifically, to efficiently produce hemp extract at an input feed rate of 10 kg per hour.

46.    Plaintiff purchased the Equipment from Precision for this particular purpose in reliance on Precision's judgment and knowledge in recommending the Equipment.

47.    The Equipment is defective it is not fit for the particular purpose for which Precision sold the Equipment, and the Equipment was defective when Precision delivered it.

48.    Plaintiff gave notice to Precision of the defects in Equipment and accordingly, its breach of implied warranty of fitness for a particular purpose. *See* Exhibit "E."

49.    However, Precision did not correct the defects and deficiencies in the Equipment to allow it to function in accordance with the purpose for which Plaintiff purchased the Equipment.

50.    As a direct and proximate result of Precision's material breach of its implied warranty of fitness for a particular purpose, Plaintiff has suffered damages, including but not limited to, the cost of purchasing replacement equipment and lost profits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter

judgment in favor of Plaintiff and against Precision awarding Plaintiff (a) damages; (b) interest; (c) the costs of this action; and (d) such other and further relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

51.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

52.     Precision is a merchant with respect to the sale of the Equipment.

53.     Precision, as a merchant with respect to the Equipment, impliedly warranted that the Equipment was merchantable and fit for the ordinary purposes for which it was intended.

54.     In purchasing the Equipment, Plaintiff relied on the implied warranty of merchantability.

55.     Precision materially breached the implied warranty of merchantability in that the Equipment was not of a quality that allows it to manufacture hemp effectively in accordance with the ordinary purposes for which it was intended.

56.     Plaintiff notified Precision the Equipment was non-conforming and defective.  *See* Exhibit "E."  However, Precision failed to take the steps to necessary to cure the defects.

57.     As a direct and proximate result of Precision's breach of the

implied warranty of merchantability, Plaintiff has suffered damages including, but not limited to, the cost of purchasing replacement equipment and lost profits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Precision awarding Plaintiff (a) damages; (b) interest; (c) the costs of this action; and (d) such other and further relief as the Court deems proper.

## COUNT V
## FRAUD IN THE INDUCEMENT

58.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

59.    Precision, through its agent, Serwatowski, made the Representations, including the representation that the Equipment was designed to be capable of producing at the rate of 10 kg per hour.

60.    The Representations were false statements of material fact.

61.    Precision knew that the Representations were false.

62.    Precision made the Representations with the intent of inducing Plaintiff to act on them by entering into the Purchase Agreement and paying the sums invoiced for the Equipment.

63.    After months of intense, ongoing discussions, Precision was well aware Plaintiff required industrial capacity distillation equipment.

13

64.     Precision intended for Plaintiff to rely upon the Representations because it knew Plaintiff would not purchase the Equipment if it did not perform the industrial volume output as requested by Plaintiff.

65.     In reliance on Precision's Representations, Plaintiff entered into the Purchase Agreement and paid the sums invoiced for the Equipment.

66.     As a direct and proximate result of Precision's false Representations, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Precision awarding Plaintiff (a) damages; (b) interest; (c) the costs of this action; and (d) such other and further relief as the Court deems proper.

### COUNT VI
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

67.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

68.     The Florida Deceptive and Unfair Trade Practices Act, Chapter 501, *Florida Statutes* ("FDUTPA"), renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

69.     At all relevant times, Precision solicited, advertised, offered, and provided goods and services in the State of Florida and thereby was engaged

14

in trade or commerce as defined in Section 501.203, *Florida Statutes*.

70.    At all relevant times, Plaintiff was a consumer as defined by Section 501.203, *Florida Statutes*.

71.    Precision's practices, as described in detail above, are unfair, unconscionable, and/or deceptive.

72.    As a direct and proximate result of Precision's unfair, unconscionable, and/or deceptive practices, Plaintiff has suffered actual damages.

73.    Plaintiff is entitled to recover its reasonable attorneys' fees and costs from Precision pursuant to Section 501.2105, *Florida Statutes*.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff and against Precision awarding Plaintiff (a) damages; (b) interest; (c) attorney's fees and the costs of this action; and (d) such other and further relief as the Court deems proper.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

74.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28 above as if fully set forth herein.

75.    Precision, through its agent, Serwatowski, made the Representations, including the representation that the Equipment was designed to be capable of producing at the rate of 10 kg per hour.

76.     The Representations were false statements of material fact.

77.     Precision either knew that the Representations were false or made the Representations without knowledge of their truth or falsity.

78.     Precision was negligent in making the Representations because it should have known the Representations were false.

79.     Precision made the Representations with the intent of inducing Plaintiff to act on them by entering into the Purchase Agreement and paying the sums invoiced for the Equipment.

80.     After months of intense, ongoing discussions, Precision was well aware Plaintiff required industrial capacity distillation equipment.

81.      Precision intended for Plaintiff to rely upon the Representations because it knew Plaintiff would not purchase the Equipment if it did not perform the industrial volume output as requested by Plaintiff.

82.     In justifiable reliance on Precision's Representations, Plaintiff entered into the Purchase Agreement and paid the sums invoiced for the Equipment.

83.     As a direct and proximate result of Precision's misrepresentations, Plaintiff has suffered damages.

to its detriment in entering into the Agreement.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Precision awarding Plaintiff (a)

damages; (b) interest; (c) the costs of this action; and (d) such other and further relief as the Court deems proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all issues so triable.

Dated:  March 15, 2023.

/s/ *Jennifer S. Eden*
**Jennifer S. Eden, Esq.**
LEAD ATTORNEY
Florida Bar No. 0867594
jeden@lathamluna.com
**Christina Y. Taylor, Esq.**
Florida Bar No. 0057616
ctaylor@lathamluna.com
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. Orange Avenue, Suite 1400
Orlando, FL  32801
Telephone:  (407) 481.5800
Facsimile:  (407) 481.5801

*Attorneys for Plaintiff*
